# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | NO. 4:23-CR-159 |
| | : | |
| CEDRIC LODGE, KATRINA MACLEAN, JOSHUA TAYLOR and DENISE LODGE | : | CHIEF JUDGE BRANN |
| | : | |
| Defendants. | : | |
| | : | ELECTRONICALLY FILED |

## DEFENDANT CEDRIC LODGE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AUTHORIZE SERVICE OF RULE 17(c) SUBPOENA TO HARVARD MEDICAL SCHOOL

### INTRODUCTION

Defendant Cedric Lodge, by and through his undersigned counsel, hereby submits this Memorandum of Law in Support of his Motion to Authorize Service of Rule 17(c) Subpoena to Harvard Medical School.

### PROCEDURAL AND FACTUAL HISTORY

Cedric L. Lodge ("Mr. Lodge") worked for Harvard University's ("Harvard") School of Medicine in the department of Anatomical Gift Program. Mr. Lodge served as the morgue manager for twenty-seven years. He was supervised directly by the managing director of the Anatomical Gift Program. The managing director reported to the director of finance for the Program in Medical Education. There were several additional layers of supervision. Mr. Lodge was the subject of an annual

work performance review and assessment. Mr. Lodge's daily work involved the preparation of documentation, and the electronic data entry of information related to the operation of the Anatomical Gift Program. Those processes regulate and document the course of Harvard's use and ultimate disposition of donor bodies and specimens.

On June 16, 2023, a five-count Indictment was entered against Defendant Cedric Lodge ("Mr. Lodge"). (ECF 1.) Two counts apply to Mr. Lodge. Count 1 alleges a conspiracy in violation of 18 U.S.C. § 371 to transport stolen property in interstate commerce which is prohibited in 18 U.S.C. § 2314. Indict. pp. 1-9, (ECF 1.) Count 2 asserts that Mr. Lodge transported in interstate commerce stolen property valued in excess of $5,000 in violation of 18 U.S.C. § 2314. Indict. pp. 10, (ECF 1.)

The Indictment alleges that the "goods, wares, merchandise," securities, or money transported were human remains. *See* 18 U.S.C. §2314; *see also*, Indict. p. 10, (ECF 1.) It is not alleged that the shipment of human remains constitutes a crime in and of itself. Among the essential elements of proof requiring proof beyond a reasonable doubt to the satisfaction of a jury is that the defendant knew that the human remains were "goods, wares, merchandise," and that they were "stolen, converted and taken by fraud." *Id.* (ECF 1.) The Indictment alleges that Mr. Lodge was employed as the morgue manager for Harvard Medical School Anatomical Gift

2

Program ("Harvard"). The Indictment, under III. Manner and Means, asserts that Mr. Lodge "stole" dissected portions of donated cadavers. Indict. p. 5, (ECF 1.)

On June 27, 2023, Mr. Lodge was arraigned and pled not guilty. (ECF 31.) The parties engaged in a process of discovery involving over one million electronic items of discovery. The United States transparently provided large productions of evidence and offered to assist the defense in the analysis and searching of the labyrinth of electronic records. Records from Harvard were produced; however, a number of records known to exist do not appear to exist in the discovery produced. The magnitude of the discovery and the unique issues in the case prompted the defense to request additional time to effectively review, investigate, and legally analyze the case. Currently, the pretrial motion deadline is November 1, 2024. Order of Court (ECF 91.)

Chief Judge Brann held a telephone status conference on Monday, August 5, 2024 among counsel representing the several defendants. (ECF 94.) During the status conference, counsel for Mr. Lodge represented to the Court that Mr. Lodge believes that there are a number of records possessed by Harvard which relate to Mr. Lodge's performance of his job. The records will inform the defense of the regulations, policies, and authority permitted by Harvard to its employees. The records are germane to the evaluation of potential pretrial motions and would be relevant to a trial. Counsel for Mr. Lodge indicated to the Court that Mr. Lodge

would submit for the Court's consideration a request for a subpoena duces tecum, pretrial, pursuant to Fed. R. Crim. P. 17(c).

The defendant's Sixth Amendment right to subpoena evidence in defense of federal criminal charges is a fundamental constitutional right.

## QUESTIONS INVOLVED

QUESTION PRESENTED: Should this Court approve the issuance of a subpoena duces tecum pursuant to Fed. R. Crim. P. 17(c) seeking records from the Defendant's former employer? An element of the federal offense requires evidence that the Defendant knowingly "stole" from the employer. The records are probative of the authority the Defendant possessed in the performance of his job.

SUGGESTED ANSWER: Yes, the Court should approve the request for the issuance of a subpoena duces tecum pursuant to Fed. R. Crim. P. 17(c) seeking records from the Defendant's former employer. The employer's records bear on the relationship between the employer and the employee. The determination of whether the employee stole any "goods" from the employer is an element of the charged crime.

## II.   AUTHORITY

### (a.)   Constitutional

The right of a criminal defendant to subpoena records in advance of trial in his own defense is as old as our Nation. The Sixth Amendment to the United States Constitution says in part: "In all criminal prosecutions, the accused shall enjoy the

right . . . to have compulsory process for obtaining witnesses in his favor. . . ." U.S. Const. amend. VI.

### (b.) Statutory

Rule 17(c)(1) of the Federal Rules of Criminal Procedure fulfills the Constitutional mandate as follows:

> A subpoena may order the witness to produce any books, papers, documents, data or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered into evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1).

A clear example of the authority is formed in *United States v. Nixon*, 418 U.S. 683 (1974). Following indictment alleging violation of several statutes by certain staff members of the White House, the Special Prosecutor filed a motion under Fed.R.Crim.P. 17(c) for a subpoena duces tecum for the production before trial of certain tapes and documents relating to meetings between the President and others. *Id.* at 683. President Nixon asserted executive privilege. *Id.* The Court in establishing the supremacy of subpoena power over executive privilege denied the motion to quash saying:

> We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be

> founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.

*United States v. Nixon*, 418 U.S. 683, 708-09 (1974).

The Court in *United States v. Burr*, 25 F. Cas. 187 (1807), Chief Justice John Marshall enforced a subpoena on behalf of the criminal defendant Aaron Burr who had subpoenaed a letter written by President Thomas Jefferson. *Id.* at 191. "Yet it is a very serious thing, if such letter should contain any information material to the defense, to withhold from the accused the power to making use of it," said the Court. *Id.*, at 192. Justice Marshall found that, "the only ground laid for the Court to act upon is the affidavit of the accused; and from that the court is induced to order that the paper be produced, or the cause be continued." *Id.*

### III.   ARGUMENT

The Managing Director of the Anatomical Gift program was Mark Cicchetti ("Mr. Cicchetti"). He was Mr. Lodge's direct supervisor during all relevant periods of this Indictment. Mr. Cicchetti was interviewed by the Federal Bureau of Investigation ("FBI") on March 7, 2023. Mr. Cicchetti explained the entire process of the processing, use, and ultimate disposition of a donor body and specimen. When asked whether "employees are allowed to sell body parts," Mr. Cicchetti responded

6

that he "did not think that there was a specific written policy about taking remains from [Harvard Medical School] or selling them because that obviously was not allowed."  See Exhibit "A" attached hereto at CLL 919[1].  The policy manuals provided in discovery do not reveal a legal prohibition to the conveyance or sale of remains.

Effective representation of Mr. Lodge in pretrial motions and at trial hinges on obtaining the records evidencing the relationship between Mr. Lodge and Harvard.  Undersigned counsel cannot effectively represent Mr. Lodge without these critical records and policies.

### (a.)   "The Nixon Three-Part Test"

The Supreme Court established a three-part test: (1) relevancy; (2) admissibility; and (3) specificity.  *Nixon*, 418 U.S. at 700. [2] That test applied to the instant facts provides the following:

### 1. <u>Relevancy</u>

The subpoenaed documents are directly relevant to all three counts of the Indictment.  In essence the Government asserts that the Defendant engaged in a scheme to defraud by redistributing previously dispersed medication in a way that violated the Pennsylvania Pharmacy Act.

---

[1] Exhibit "A" was redacted to protect confidential information.
[2] *See* also, *United States v. Eisenhart*, 43 Fed. Appx. 500, 505 (3d Cir. 2002).

Federal Rule of Evidence 401 says as follows: "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence. F.R.E. 401.

Mr. Lodge worked for Harvard as the morgue manager for 27 years. Harvard maintains exclusive control over the records sought by the subpoena. *See* Exhibit "B" attached hereto.  Mr. Lodge seeks the following records:

1. Provide the personnel file of Cedric Lodge.
2. Provide employment records of annual leave, sick leave, compensation, and pay raises related to Cedric Lodge.  Please provide those Cedric Lodge's initial hiring continuing to termination from employment.
3. Provide all documents related to Cedric Lodge's work performance, annual assessments, employment discipline, criticism, or expression of poor job performance.
4. Provide all policies, procedures, guidance, and rules of Harvard University Medical School which Cedric Lodge was subject while serving as an employee.
5. Provide all communications between Cedric Lodge and Mark Cicchetti, Managing Director of the Harvard Medical School ("HMS") Anatomical Gift Program, in which the compliance or non-compliance with HMS policies and procedures were discussed.
6. Provide all communications between Cedric Lodge and Mark Cicchetti, Managing Director of the HMS Anatomical Gift Program, in which the compliance or non-compliance with state or federal laws were discussed.
7. Provide all communications between Cedric Lodge and any of his HMS supervisors in which compliance or non-compliance with HMS policies and procedures were discussed.
8. Provide all "papers to morgue," cadaver identification verifications, cremation checklists, receipt of donor forms, and declarations of closure of file for each donor which is the subject of irregular disposition by Cedric Lodge.

Among the essential elements of 18 U.S.C. § 2314 are the following: proof that "goods, wares, merchandise" were "stolen, converted and taken by fraud." *Id.* (ECF 1.) The Indictment alleges that Mr. Lodge was employed as the morgue manager for Harvard Medical School Anatomical Gift Program. The Indictment, under III. Manner and Means, asserts that Mr. Lodge "stole" dissected portions of donated cadavers. Indict. p. 5, (ECF 1.) Thus, the limitations, policies, procedures, work performance evaluations, personnel file, supervisory direction, and documentation related to the donors at issue in this case are probative of whether Mr. Lodge had authority to take the actions he took. Specifically, this documentation has a tendency to make the existence of facts of whether "goods were stolen" (i.e., facts of consequence to the determination of the action) more probable or less probable than it would without the evidence

Further, it will aid the Court in any pretrial determination and will aid the trier of fact in determining the actions of Mr. Lodge.

**2. <u>Admissibility</u>**

The evidence is directly relevant to the allegation of whether goods were "stolen." FRE 401. The documents would be authenticated and testified about by witnesses from Harvard. Pretrial production is necessary to effectively prepare for trial. Additionally, the records are relevant to potential dispositive pretrial motions pursuant to Fed. R. Crim. P. 12(b)(3). Thus, pretrial production of these records is

9

necessary to equip the Defendant with records related to pretrial motions. Statements attributable to Harvard may be admissible as a recorded recollection under FRE 803(5), or as a business record, FRE 803(6).

### 3. **Specificity**

The subpoena is specific as to what records are sought. The sought-after records are identified by reference in the subpoena. The specific records sought are those limited to the Defendant, Mr. Lodge, or the donors in question. *See*, Exhibit "B" (subpoena, August 30, 2024). The subpoena request is specific to those records and documents known to be in the possession of the subpoenaed entity and relevant to substantive pretrial and trial issues related to the essential elements of proof of stolen goods.

## IV. **CONCLUSION**

Mr. Lodge has submitted a good faith request seeking to exercise his Sixth Amendment right under the United States Constitution for a pretrial subpoena duces tecum for relevant and admissible evidence which is essential to contest the instant charges.

                                               Respectfully submitted,

                                               /s/ Patrick A. Casey
                                               Patrick A. Casey

                                               Attorney for Defendant, Cedric Lodge

Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA  18503
(570) 342-6100

Date:  August 9, 2024

## CERTIFICATE OF COMPLIANCE
## <u>PURSUANT TO LOCAL RULE 7.8</u>

This brief complies with local Rule 7.8(b). The brief contains 2,210 words.

<u>/s/ Patrick A. Casey</u>
Patrick A. Casey

# CERTIFICATE OF SERVICE

I, Patrick A. Casey, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of its Motion to Authorize Service of a Rule 17(c) Subpoena to Harvard Medical School was served upon the following counsel of record via the Court's ECF system on this 9th day of August 2024:

>Sean A. Camoni, Esquire
>U.S. Attorney's Office
>Suite 309
>235 North Washington Avenue
>Scranton, PA 18503
>
>Christopher R. Opiel, Esquire
>Opiel Law
>88 N. Franklin Street
>Wilkes Barre, PA 18701
>
>Edward J. Rymsza, Esquire
>Miele & Rymsza, P.C.
>125 East Third Street
>Williamsport, PA 17701
>
>Hope C. Lefeber, Esquire
>Hope C. Lefeber, LLC
>Two Penn Center
>1500 JFK Boulevard
>Philadelphia, PA 19102

/s/ Patrick A. Casey
Patrick A. Casey